# Exhibit 1

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

GEORGE NELSON, on behalf of himself )
and all others similarly situated, )
                      )
             Plaintiff, )
                      )        Case No. 18 cv 07400
        v. )
                      )        Judge Sara L. Ellis
ROADRUNNER TRANSPORTATION )
SYSTEMS, INC., )
                      )
            Defendant. )

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and between Plaintiff, individually and on behalf of the Settlement Class (as defined below), by and through Class Counsel (as defined below), and Defendant Roadrunner Transportation Systems, Inc. ("Roadrunner") in order to effect a full and final settlement and dismissal with prejudice of all claims against Roadrunner alleged in the above-captioned litigation on the terms set forth below and to the full extent reflected herein. Capitalized terms shall have the meaning ascribed to them in Section II of this Settlement Agreement.

**I.     RECITALS**

1.     Between April and May, 2018, Roadrunner was the subject of two separate phishing campaign attacks launched by an unknown cybercriminal.

2.     Plaintiff, individually and on behalf of a putative class, filed an action against Roadrunner in the United States District Court for the Northern District of Illinois captioned, *George Nelson, on behalf of himself and all others similarly situated v. Roadrunner Transportation Systems, Inc.*, Case No. 18 cv 07400, alleging claims arising from the aforesaid attacks.

3.      Specifically, Plaintiff alleges that the attacks resulted in the exposure of personally identifiable information, including names, addresses, social security numbers, phone numbers, dates of birth, payroll information, dependent information, and health plan information ("HR Data") of current and former Roadrunner employees.

4.      Plaintiff and Class Counsel believe that the legal claims asserted in the Action have merit. Class Counsel have investigated the facts relating to the claims and defenses alleged and the underlying events in the Action, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Action, and have conducted a thorough assessment of the strengths and weaknesses of the Parties' respective cases.

5.      Plaintiff and Class Counsel, on behalf of the Settlement Class, have concluded, based upon their investigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Action through trial, the risks and costs associated with further prosecution of the Action, the uncertainties of complex litigation, the desired outcome from continued litigation, and the substantial benefits to be received pursuant to this Settlement Agreement, that a settlement with Roadrunner on the terms set forth herein is fair and reasonable and in the best interest of Plaintiff and the Settlement Class. Plaintiff and Class Counsel believe that the Settlement confers substantial benefits upon the Settlement Class.

6.      Roadrunner denies each and all of the claims asserted against it in the Action, and denies all charges of wrongdoing or liability alleged, or that could be alleged in the Action.

7.      Nonetheless, Roadrunner has concluded that further conduct of the Action would be protracted and expensive.  Roadrunner also has taken into account the uncertainty and risks inherent in any litigation and has concluded that it is desirable and beneficial that the Action be

2

fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

8.      Without any admission of any liability or wrongdoing, Roadrunner desires to settle the Action and all claims asserted in or subsumed by the Action on the terms and conditions set forth herein for the sole purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Action, and for putting to rest the controversies addressed and claims raised in the Complaint.

9.      On November 14, 2019, counsel for the Parties finalized a multiple-day mediation of their dispute, with Faustin A. Pipal serving as the mediator. The mediation was successful, and the Parties were able to reach a settlement in principle as to the benefits to be provided to the Settlement Class.

10.     A series of negotiations facilitated by Mr. Pipal following the mediation sessions resulted in agreement in principle as to attorneys' fees.

11.     The Parties agree and understand that neither this Settlement Agreement nor the Settlement it represents shall be construed as an admission by Roadrunner of any wrongdoing whatsoever, including any admission of a violation of any statute or law or of liability on the claims or allegations in this Action or any similar claims or allegations in other proceedings. The Parties further agree and understand that neither this Settlement Agreement nor the Settlement it represents shall be construed as an admission by Roadrunner that any of the claims asserted in the Action are or would be suitable for class treatment if the Action proceeded through litigation or trial.

12.     The Parties, by and through their respective duly authorized counsel of record, hereby stipulate and agree that, subject to the approval of the Court, the Action, the Released

Claims, all matters and claims in the Complaint, and all matters and claims arising out of or related to the allegations or subject matter of the Complaint and Action, shall be finally and fully settled, compromised, dismissed, and released, on the merits and with prejudice, as to the Parties, the Settlement Class, and the Settlement Class Members, upon and subject to the following terms and conditions.

## II.      DEFINITIONS

As used in the Settlement Agreement and its exhibits, the following terms have the meanings specified below:

13.      "*Action*" means the lawsuit, *Nelson v. Roadrunner Transportation Systems, Inc., Case No. 1:18-cv-07400*, pending in the United States District Court for the Northern District of Illinois.

14.      *"CAFA Notices"* refers to the notice of this Settlement to be served upon state and federal regulatory authorities as required by the Class Action Final Approval Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

15.      "*Claim Deadline*" means 360 Days after the Notice Deadline set forth in Paragraph 77.

16.      "*Claim Form*" means the form, attached as Exhibit C to this Settlement Agreement, that Settlement Class Members must complete and submit on or before the Claim Deadline in order to be eligible for the benefits described herein.  The Claim Form shall require a sworn signature under penalty of perjury, but shall not require a notarization or any other form of verification.

17.      "*Claims Administration*" means the processing and payment of claims received from Settlement Class Members by the Settlement Administrator.

18.      "*Class Counsel"* shall mean John A. Yanchunis and Jonathan B. Cohen, Morgan & Morgan Complex Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, Florida 33602,

and Shannon M. McNulty, Clifford Law Offices, P.C., 120 North Lasalle Street, 31st Floor, Chicago, IL 60602.

19.     "*Claims Referee*" means Faustin Pipal, or another third party designated by agreement of the Parties and approved by the Court to make final decisions about disputed claims for settlement benefits.

20.     "*Complaint*" means the Class Action Complaint and Demand for Jury Trial filed by Plaintiff on November 7, 2018.

21.     "*Court*" means the United States District Court for the Northern District of Illinois.

22.     "*Days*" means calendar days, except, when computing any period of time prescribed or allowed by this Settlement Agreement, does not include the day of the act, event, or default from which the designated period of time begins to run. Further, when computing any period of time prescribed or allowed by this Settlement Agreement, include the last day of the period unless it is a Saturday, a Sunday, or a Federal legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or Federal legal holiday.

23.     "*Data Exposure*" means the alleged exposure that occurred between April 2018 and May 2018 of personally identifiable information of certain current and former Roadrunner employees caused by a campaign of phishing attacks by unknown cybercriminals.

24.     "*Effective Date*" means the date defined in Paragraph 121 of this Settlement Agreement.

25.     "*Final*" means that all of the following events have occurred: (a) the settlement pursuant to this Settlement Agreement is approved by the Court; (b) the Court has entered the Final Order and Judgment; and (c) either (i) no appeal has been taken from the judgment as of the date on which all times to appeal or seek permission to appeal therefrom have expired, or (ii) an appeal

5

or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to further review by any court, whether by appeal, petitions or rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Order and Judgment in all material respects. Notwithstanding the above, any order modifying or reversing any Service Award or award of attorneys' fees, costs, or expenses shall not affect whether a judgment in this matter is Final or any other aspect of the judgment.

26. "*Final Approval Hearing*" means the hearing in the Action at which the Court considers final approval of this Settlement and the entry of judgment.

27. "*Final Order and Judgment*" means the final judgment and order of dismissal with prejudice to be entered in the Action in connection with the Settlement after the Final Approval Hearing.

28. "*HR Data*" means personally identifiable information of current and former Roadrunner employees, including names, addresses, social security numbers, phone numbers, dates of birth, payroll information, dependent information, and health plan information.

29. "*Notice*" means the written notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order.

30. "*Notice and Claims Administration Costs*" means actual costs associated with or arising from providing notice to Settlement Class Members and performing Claims Administration in connection with the Settlement.

31. "*Notice Program*" means the notice program described in Section VI.

32. "*Parties*" means Plaintiff and Roadrunner.

6

33. "*Person*" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

34. "*Plaintiff*" means George Nelson.

35. "*Preliminary Approval Date*" means the date on which the Preliminary Approval Order has been entered by the Court.

36. "*Preliminary Approval Order*" means the Order Preliminarily Approving Settlement and Providing for Notice to the Class.

37. "*Related Entities*" means Roadrunner's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of Roadrunner's and their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in the Action, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Exposure or who pleads *nolo contendere* to any such charge.

38. "*Released Claims*" means any and all past, present, and future claims, causes of action, counterclaims, lawsuits, rights, demands, charges, complaints, actions, obligations, or liabilities under any legal or equitable theory, whether known, unknown, suspected, or unsuspected or capable of being known or suspected, and whether, accrued, unaccrued, matured, or not matured, including but not limited to, negligence; negligence per se; breach of fiduciary duty;

7

breach of contract; breach of implied contract; violations of any state consumer protection statute; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and any causes of action under 18 U.S.C. §§ 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs and expenses, set-offs, losses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning, or arising out of the Data Exposure and alleged exposure and compromise of any Settlement Class Member's personally identifiable information or any other allegations, facts, or circumstances described in the Action or the Complaint. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the Settlement contained in this Settlement Agreement, and shall not include the claims of Persons who have timely and validly requested exclusion from the Settlement Class pursuant to the opt-out procedures set forth in this Settlement Agreement.

39. "*Released Persons*" means Roadrunner, the Related Entities, and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, assigns, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

40. "*Roadrunner*" means Roadrunner Transportation Systems, Inc.

8

41. "*Roadrunner Counsel*" means Paul G. Karlsgodt, Baker & Hostetler LLP, 1801 California Street, Suite 4400, Denver, Colorado 80202.

42. "*Settlement*" means the settlement of the Action upon the terms and conditions set forth in this Settlement Agreement.

43. "*Settlement Administrator*" means Epiq Systems or another company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation, if jointly agreed upon by the parties and approved by the Court.

44. "*Settlement Agreement*" means this Settlement Agreement, including all exhibits hereto.

45. "*Settlement Class*" means all current and former Roadrunner employees whose personally identifiable information was compromised as a result of the Data Exposure which occurred between April and May, 2018, specifically excluding: (i) all Persons who timely and validly request exclusion from the Settlement Class in accordance with the opt-out procedures set forth in this Settlement Agreement; and (ii) any Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Exposure or who pleads *nolo contendere* to any such charge.

46. "*Settlement Class Member[s]*" means all persons who fall within the definition of the Settlement Class.

47. "*Settlement Website*" means a dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including this Settlement Agreement, Notice, and Claim Form, among other things.

## III.  CERTIFICATION OF SETTLEMENT CLASS

48. For settlement purposes only, Plaintiff will request that the Court certify a Settlement Class defined as follows:

All current and former Roadrunner employees whose HR Data was compromised as a result of the Data Exposure which occurred between April and May, 2018.

49. Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, Roadrunner agrees to stipulate to the certification of the Settlement Class and will not oppose Plaintiff's request for certification.

50. Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, Roadrunner stipulates that Plaintiff is an adequate representative of the Settlement Class, and that Class Counsel are adequate counsel for the Settlement Class.

51. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Party's position on the issue of class certification or any other issue. The Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case, or action, as to which all of their rights are specifically preserved.

## IV. BENEFITS TO SETTLEMENT CLASS MEMBERS

52. **Compensation to Settlement Class Members**. Subject to the terms of this Settlement Agreement, Roadrunner shall make available the following compensation to Settlement Class Members who, except where noted, submit valid Claim Forms. Before submitting a claim for reimbursement under Claim B in category (b) below ("Reimbursement of Expenses"), Settlement Class Members who previously enrolled in AllClear identity theft protection services or Kroll identity theft protection services offered by Roadrunner must first submit their claim to

10

AllClear or Kroll and have that claim denied or exhausted before being eligible to claim any additional amounts under this Settlement Agreement:

(a)     Open Enrollment for Identity Theft Protection. All Settlement Class Members will be given an opportunity to enroll in Experian's IdentityWorks identity theft protection services for a period of 24 months.  This enrollment will be for an additional 24 months beyond the AllClear or Kroll identity theft protection services provided to affected employees following the Data Exposure.  Settlement Class Members will be given one year from the date the activation codes are mailed in which to activate the additional credit monitoring.  The approximate retail value to each class member accepting this benefit is $19.99 per month of enrollment, although this does not reflect the actual cost to Defendant in providing the benefit.

(b)     Reimbursement of Expenses: Settlement Class Members may choose all applicable claim categories below.  However, Settlement Class Members may seek reimbursement for each hour of lost time only once, regardless whether the time was spent dealing with issues in multiple categories simultaneously. The overall cap for any individual claimant is $250 for all amounts claimed in Claim A and $5,000 for all amounts claimed in Claim B, below. For purposes of any claim for reimbursement for lost time, the claimant must have spent at least one full hour before being entitled to claim one or more hours of time.

Claim A:     Compensation for Ordinary Losses. Settlement Class Members will be eligible for compensation for ordinary losses, as defined below, up to a total of $250 per person, upon submission of a claim and supporting documentation. Ordinary losses include: (i) costs associated with credit monitoring or identity theft insurance purchased directly by the claimant, provided that the claimant attests the product was purchased

11

primarily as a result of the Data Exposure; (ii) costs associated with requesting a credit report or credit freeze, provided that the claimant requested the report or credit freeze as a result of the Data Exposure; (iii) lost time of at least one hour and up to three hours at the rate of $20 per hour, provided that the claimant provides documentation or a narrative explanation plausibly establishing that the time was spent dealing with issues relating to the Data Exposure; and (iv) postage, long-distance charges, and other incidental expenses, provided that the claimant provides documentation of the charges and a narrative explanation plausibly establishing their relationship to the Data Exposure.

Claim B:        Compensation for Extraordinary Losses. Settlement Class Members will be eligible for compensation for extraordinary losses, including losses associated with identity theft, tax fraud, other forms of fraud, and other actual misuse of personal information, provided that the claim is supported by reasonable documentation of the amount of the losses and provided that the losses are otherwise unreimbursed and plausibly the result of the Data Exposure. Claimants who submit qualifying claims under this category may also seek reimbursement for up to 10 hours of lost time at the rate of $25 per hour, for time spent dealing with issues relating to the identity theft, fraud, or other misuse. The maximum amount any one claimant can recovery under Claim B is $5,000. Before being eligible for payment for extraordinary losses, claimants who previously signed up for AllClear's identity theft protection services or Kroll's identity theft

protection services offered by Roadrunner must submit their claim to AllClear or Kroll and have that claim denied or exhausted.

53. **Injunctive Relief.** For a period of three (3) years from the date of execution of this Settlement Agreement, Roadrunner agrees to implement and maintain the following cyber security measures through at least December 31, 2022:

(a) Incident Response Plan: prior to the entry of final approval of the Settlement Agreement, develop and implement an Incident Response Plan to immediately respond to future data security issues.

(b) Additional Personnel: (i) employ a Chief Information Officer who reports directly either to the Chief Executive Officer or the Chief Operating Officer, and (ii) create an Immediate Response IT Team and add immediate response personnel to existing teams, including the End User Support and Server Engineering Teams, to increase IT responsiveness and to support other data security initiatives.

(c) Cybersecurity Training and Awareness Program: implement annual on-line cybersecurity training for all employees, covering different aspects of cybersecurity and to further educate employees on cybersecurity.

(d) Data Security Policies: create and implement new policies, protocols, and controls related to the ownership, review, and distribution of personally identifiable information and other private data; the security of any files containing the personally identifiable information of employees; and, the electronic transfer of such files.

(e) Enhanced Security Measures For Email Accounts, Servers, And Employee Computers: (i) deploy Cofense PhishMe or a similar product to advance employee awareness through training, education, and testing, and to create a culture of cyber safety, and (ii) deploy

13

Cofense Triage or a similar product to quickly and efficiently identify and shut down phishing attacks in progress.

(f)     Restricted Access to Tax, Payroll, and Health Plan Information: (i) Before December 31, 2019, implement policies reducing the number of administrators with access to tax, payroll, and health plan information, and (ii) block foreign access to Office 365 from 140 countries, including China, Russia, and Nigeria.

(g)     Testing of Policies and Information Security Environment: implement monthly random testing to validate adherence of employees to Roadrunner's data security policies, including quarterly sweeps and analysis of email access to monitor for threats.

(h)     Access Audits:  conduct audits to monitor attempts by employees to access tax, payroll, and health plan information to ensure adherence to restricted access policies. Through December 31, 2019, Roadrunner will conduct quarterly audits. From January 1, 2020 through December 31, 2022, Roadrunner will conduct biannual audits.

## V.     SETTLEMENT ADMINISTRATION

54.     All Notice and Claims Administration Costs will be paid by Roadrunner, which are estimated to be approximately $79,000.

55.     The Parties have agreed to request that the Court appoint Epiq Systems as Settlement Administrator.  Once approved by the Court, the Settlement Administrator will be an agent of the Court and will be subject to the Court's supervision and direction as circumstances may require.

56.     The Settlement Administrator will cause the Notice Program to be effectuated in accordance with the terms of this Settlement Agreement and any orders of the Court.  The Settlement Administrator may request the assistance of the Parties to facilitate providing notice

14

and to accomplish such other purposes as may be approved by Roadrunner Counsel and Class Counsel. The Parties shall reasonably cooperate with such requests.

57. The Settlement Administrator will administer and update the Settlement Website in accordance with the terms of this Settlement Agreement. Class Counsel and Roadrunner Counsel shall agree on all information and documents to be posted on the Settlement Website.

58. The Settlement Administrator will conduct Claim Administration in accordance with the terms of the Settlement Agreement, any additional processes agreed to by Class Counsel and Roadrunner Counsel and subject to the Court's supervision and direction as circumstances may require.

59. To make a claim, a Settlement Class Member must complete and submit a valid, timely, and sworn Claim Form. Claim Forms shall be submitted by U.S. mail and must be postmarked no later than the Claim Deadline.

60. The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted, for timeliness, completeness, and validity.

61. The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all documentation or information needed to complete the Claim Form, including any documentation required to support claims for compensation under Paragraph 51 above; and (3), when applicable, the information submitted could lead a reasonable person to conclude that the claimant is eligible for the category and/or amount for which a claim is submitted (collectively, "Facially Valid"). The Settlement Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Settlement Administrator may reasonably require in order to evaluate the claim, *e.g.,* documentation requested on the Claim

15

Form, information regarding the claimed expenses, available insurance or other sources of reimbursement, the status of any claims made for insurance benefits or other reimbursement, and claims previously made for identity theft and the resolution thereof.

62. Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Settlement Administrator shall request additional information ("Claim Supplementation") and give the claimant thirty (30) Days to cure the defect before rejecting the claim. The Settlement Administrator will provide a copy of the request for Claim Supplementation concurrently to Roadrunner Counsel and Class Counsel. In the event of unusual circumstances interfering with a claimant's compliance with a request for Claim Supplementation within the 30-Day period, the claimant may request and, for good cause shown (e.g., illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-Day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the Effective Date. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

63. Following receipt of additional information requested as Claim Supplementation, the Settlement Administrator shall have thirty (30) Days to accept, in whole or in lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Settlement Administrator determines that such a claim is Facially Valid, then the claim shall be paid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form or evaluate the claim, then the Settlement Administrator may reject the claim without any further action. If the claim is rejected for other reasons, then the claim shall be referred to the Claims Referee.

16

64.     Settlement Class Members shall have thirty (30) Days from receipt of an offer of partial payment from the Settlement Administrator to accept or reject that offer.  If a Settlement Class Member rejects an offer of partial payment from the Settlement Administrator, the Settlement Administrator shall have fifteen (15) Days to reconsider its initial determination and make a final determination.  If the claimant approves the final determination, then the approved amount shall be the amount to be paid.  If the claimant does not approve the final determination within thirty (30) Days of receipt, then the dispute will be submitted to the Claims Referee within an additional ten (10) Days.

65.     If any dispute is submitted to the Claims Referee, the Claims Referee may approve the Settlement Administrator's determination by making a ruling within fifteen (15) Days.  The Claims Referee may make any other final determination of the dispute or request further supplementation of a claim within thirty (30) Days.  The Claims Referee's determination shall be based on whether the Claims Referee is persuaded that the claim and/or claimed amounts are reasonably supported in fact and were more likely than not related to the Data Exposure.  The Claims Referee shall have the power to approve a claim in full or in part.  The Claims Referee's decision will be final and non-appealable.  Any claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the Claims Referee to verify the claim through third-party sources.  The claimant's failure to cooperate shall be grounds for denial of the claim in full.  The Claims Referee shall make a final decision within thirty (30) Days of receipt of all supplemental information requested.

66.     The Settlement Administrator will maintain records of all Claim Forms submitted until the later of (a) one hundred eighty (180) Days after the Effective Date or (b) the date all Claim

17

Forms have been fully processed. Claim Forms and supporting documentation may be provided to the Court upon request and to Class Counsel and/or Roadrunner Counsel to the extent necessary to resolve Claims Administration issues pursuant to this Settlement Agreement. Roadrunner or the Settlement Administrator will provide other reports or information as requested by the Court.

67. Subject to the terms and conditions of this Settlement Agreement, the Settlement Administrator shall mail or otherwise provide checks for approved claims within sixty (60) days of the Effective Date, or within thirty (30) Days of the date that the claim is approved, whichever is later.

68. Checks for approved claims shall be mailed to the address provided by the Settlement Class Member on his or her Claim Form.

69. Cashing a check for an approved claim is a condition precedent to any Settlement Class Member's right to receive benefits under this Settlement Agreement. All checks issued under this section shall be void if not negotiated within sixty (60) calendar days of their date of issue and shall bear the language "This check must be cashed within 60 days, after which time it is void." Checks issued pursuant to this section that are not negotiated within sixty (60) calendar days of their date of issue shall not be reissued. In the event any Settlement Class Members fail to cash their checks, the Parties will seek the direction of the Court as to the disposition of those checks and the funds which they represent. If a Settlement Class Member fails to cash a check issued under this section before it becomes void, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief under the Settlement shall be extinguished, and Roadrunner shall have no obligation to make payments to the Settlement Class Member for compensation or expense

18

reimbursement under Paragraph 51 or to make any other type of monetary relief to the Settlement Class Member.

70. Roadrunner agrees not to request or otherwise obtain from the Settlement Administrator a listing or report of the names of Settlement Class Members who file Claim Forms. Roadrunner Counsel may obtain such a listing as is reasonably necessary to effectuate the Settlement or the administration of the Settlement, and shall advise Class Counsel of such need, but Roadrunner agrees that this listing, or the information contained therein, is not to be shared with Roadrunner, its employees, officers, directors, or affiliates.

71. Information submitted by Settlement Class Members in connection with submitted claims for benefits under of this Settlement Agreement shall be deemed confidential and protected as such by the Settlement Administrator, Claims Referee, Class Counsel, and Roadrunner Counsel.

## VI. NOTICE TO SETTLEMENT CLASS MEMBERS

72. The Parties agree that the following Notice Program provides reasonable notice to the Settlement Class.

73. Notice shall be provided to Settlement Class Members via (1) direct notice; and, (2) notice on the Settlement Website.

74. Within seven (7) Days of the entry of the Preliminary Approval Order and engagement of a Settlement Administrator, Roadrunner shall provide the Settlement Administrator with the names and addresses of the Settlement Class Members. The Settlement Administrator shall, by using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("Postal Service"), obtain updates, if any, to the mailing addresses.

75. Within thirty (30) Days of the entry of the Preliminary Approval Order (the "Notice Deadline"), the Settlement Administrator shall mail the Notice to all Settlement Class Members by First Class U.S. Mail.

19

76.    If any Notice is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail.  Other than as set forth in the preceding sentence, neither the Parties nor the Settlement Administrator shall have any obligation to re-mail a Notice to a Settlement Class Member.

77.    The Notice mailed to Settlement Class Members will consist of a Short-Form Notice in a form substantially similar to that attached hereto as Exhibit A. The Settlement Administrator shall have discretion to format this Short-Form Notice in a reasonable manner to minimize mailing and administrative costs. Before Notices are mailed, Class Counsel and Roadrunner Counsel shall first be provided with a proof copy (reflecting what the items will look like in their final form), and shall have the right to inspect the same for compliance with the Settlement Agreement and any orders of the Court.

78.    No later than thirty (30) Days following entry of the Preliminary Approval Order and engagement of a Settlement Administrator, and prior to the mailing of the Notice to Settlement Class Members, the Settlement Administrator will create a dedicated Settlement Website. The Settlement Administrator shall cause the Complaint, Short-Form Notice, Long-Form Notice (substantially in the form of Exhibit B hereto), and Claim Form, as approved by the Court, as well as this Settlement Agreement, to be made available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by Class Counsel and Roadrunner Counsel, which approval shall not be unreasonably withheld.  The website address and the fact that the Long-Form Notice and a Claim Form are available through the website shall be included in the Notice mailed to Settlement Class Members.

79. The Settlement Website shall be maintained and updated until thirty (30) Days after the Claim Deadline has passed.

80. Roadrunner agrees that the Notice and Settlement Website will advise Settlement Class Members that no listing or report of the names of Settlement Class Members who file Claim Forms will be provided to Roadrunner, its employees, officers, directors, or affiliates.

81. Claim Forms shall be returned or submitted to the Settlement Administrator via U.S. Mail by the Claim Deadline set by the Court or be forever barred.

82. Prior to the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel to file with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to its compliance with the Court-approved Notice Program.

## VII. OPT-OUT PROCEDURE

83. Each Settlement Class Member shall have the right to opt-out and not participate in the Settlement Agreement, as provided for in the Preliminary Approval Order.

84. The Notice shall inform each Settlement Class Member of his or her right to request exclusion from the Settlement Class and not to be bound by this Settlement Agreement, if, within such time as is ordered by the Court ("Opt-Out Period"), the Settlement Class Member personally signs and timely submits, completes, and mails a request for exclusion ("Opt-Out Request") to the Settlement Administrator at the address set forth in the Notice. To be effective, an Opt-Out Request must be postmarked no later than the final date of the Opt-Out Period.

85. The Parties will recommend to the Court that the Opt-Out Period be the ninety (90) Day period beginning upon the entry of the Preliminary Approval Order.

86. For a Settlement Class Member's Opt-Out Request to be valid, it must (a) state his or her full name, address, and telephone number; (b) contain the Settlement Class Member's

personal and original signature (or the original signature of a person previously authorized by law, such as a trustee, guardian or person acting under a power of attorney to act on behalf of the Settlement Class Member with respect to a claim or right such as those in the Action); and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and/or to waive all rights to the benefits of the Settlement. The Settlement Administrator shall promptly inform Class Counsel and Roadrunner Counsel of any Opt-Out Requests.

87.    All Settlement Class Members who submit timely and valid Opt-Out Requests in the manner set forth in Paragraph 86, above, referred to herein as "Opt-Outs," shall receive no benefits or compensation under this Settlement Agreement, shall gain no rights from the Settlement Agreement, shall not be bound by the Settlement Agreement, and shall have no right to object to the Settlement or proposed Settlement Agreement or to attend the Final Approval Hearing.  All Settlement Class Members who do not request to be excluded from the Settlement Class in the manner set forth in Paragraph 86, above, shall be bound by the terms of this Settlement Agreement, including the Release contained herein, and any judgment entered thereon, regardless of whether he or she files a Claim Form or receives any benefits from the Settlement.

88.    An Opt-Out Request or other request for exclusion that does not fully comply with the requirements set forth in Paragraph 86 above, or that is not timely submitted or postmarked, or that is sent to an address other than that set forth in the Notice, shall be invalid, and the person submitting such request shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and any judgment entered thereon.

89.    No person shall purport to exercise any exclusion rights of any other person, or purport (a) to opt-out Settlement Class Members as a group, in the aggregate, or as a class

22

involving more than one Settlement Class Member; or (b) to opt-out more than one Settlement Class Member on a single paper, or as an agent or representative. Any such purported Opt-Out Requests shall be void, and the Settlement Class Member(s) who is or are the subject of such purported Opt-Out Requests shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and judgment entered thereon, unless he or she submits a valid and timely Opt-Out Request.

90. Within seven (7) Days after the last Day of the Opt-Out Period, the Settlement Administrator shall furnish to Class Counsel and to Roadrunner Counsel a complete list of all timely and valid Opt-Out Requests (the "Opt-Out List").

## VIII. OBJECTIONS TO THE SETTLEMENT

91. Any Settlement Class Member who wishes to object to the proposed Settlement Agreement must submit a timely written notice of his or her objection ("Objection") by the Objection Date. Such notice shall (i) state the objecting Settlement Class Member's full name, current address, telephone number, and e-mail address (if any); (ii) contain the objecting Settlement Class Member's original signature; (iii) set forth information identifying the objector as a Settlement Class Member, including proof that the objector is within the Settlement Class (e.g., copy of Notice or copy of original notice of the Data Exposure); (iv) set forth a statement of all grounds for the objection, including any legal support for the objection that the objector believes applicable; (v) identify all counsel representing the objector; (vi) state whether the objector and/or his or her counsel will appear at the Final Approval Hearing; (vii) contain the signature of the objector's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; (viii) include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past three (3) years; and (ix) include

23

copies of any documents that the objecting Settlement Class Member wishes to submit in support of his or her position.

92. To be timely, an Objection in the appropriate form must be filed with the Clerk of the Court no later than one hundred twenty (120) Days from the Preliminary Approval Date (the "Objection Date") and mailed or hand delivered concurrently upon Class Counsel and Roadrunner Counsel at addresses set forth in the Notice. The deadline for filing Objections shall be included in the Notice.

93. An objector is not required to attend the Final Approval Hearing. If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file with the Court, and mail or hand-deliver to Class Counsel and Roadrunner Counsel, a notice of appearance no later than one hundred twenty (120) Days after the Preliminary Approval Date.

(a) If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, the notice of appearance filed with the Court must also identify the attorney(s) representing the objector who will appear at the Final Approval Hearing and include each such attorney's name, address, phone number, e-mail address, state bar(s) to which counsel is admitted, as well as associated state bar numbers, and a list identifying all objections such counsel has filed to class action settlements from January 1, 2016 to the present, the results of each objection, any court opinions ruling on the objections, and any sanctions issued by a court in connection with objections filed by such attorney.

(b) If the objecting Settlement Class Member intends to request permission from the Court to call witnesses at the Final Approval Hearing, the objecting Settlement Class

24

Member must provide a list of any such witnesses together with a brief summary of each witness's expected testimony at least sixty (60) Days before the Final Approval Hearing.

(c) Any Settlement Class Member who fails to comply in full with the requirements for objecting set forth in this Settlement Agreement, the Notice, and any applicable orders of the Court shall forever waive and forfeit any and all rights he or she may have to raise any objection to the Settlement Agreement, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing, shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means, and shall be bound by the Settlement Agreement and by all proceedings, orders, and judgments in the Action. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions set forth in this Section. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final Order and Judgment approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack. Any objecting Settlement Class Member who appeals final approval of the Settlement Agreement will be required to post an appeal bond.

## IX. ATTORNEYS' FEES, COSTS AND EXPENSES AND SERVICE AWARD

94. Class Counsel will petition the Court for a service award not to exceed $2,500.00 for the named Plaintiff, which award is intended to recognize Plaintiff for his efforts in the litigation and commitment on behalf of the Settlement Class ("Service Award"). Roadrunner does not object to the service award sought and will not oppose Class Counsel's application for said Service Award. If approved by the Court, Roadrunner will pay the Service Award to an account established by Class Counsel no later than 15 Days after the Effective Date.

95. Class Counsel will petition the Court for an award of attorneys' fees, costs and expenses in an amount not to exceed $388,000.00. Roadrunner will not oppose Class Counsel's

application for said award of fees up to that amount. If approved by the Court, Roadrunner will pay the Court-approved amount for attorneys' fees, costs, and expenses to an account established by Class Counsel no later than 15 Days after the Effective Date.

96.    Class Counsel will file the applications with the Court for Service Awards and attorneys' fees, costs, and expenses concurrently with the motion for entry of Final Order and Judgment, unless otherwise ordered by the Court.

97.    The Parties agree that Roadrunner will not in any event or circumstance be required to pay any amounts to Plaintiff or Class Counsel for Service Awards and attorneys' fees, costs, and expenses in excess of the amounts identified above in Paragraphs 96 and 97.

98.    The Parties agree that the Court's approval or denial of any request for Service Awards and/or attorneys' fees, costs, and expenses are not conditions to this Settlement Agreement. The Parties further agree that the amount(s) of the Service Award, and of any award of attorneys' fees, costs, or expenses, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order of the Court, or modification, reversal, or appeal of any order of the Court, concerning the amount(s) of the Service Award or any attorneys' fees, costs, or expenses, ordered by the Court to be paid to Class Counsel or Plaintiff shall affect whether the Final Order and Judgment is Final, cancel or terminate this Settlement Agreement, or constitute grounds for cancellation or termination of this Settlement Agreement.

**X.    NOTICES**

99.    All notices (other than the Notice and CAFA Notices) required by the Settlement Agreement shall be made in writing and communicated by mail to the following addresses:

All Notices to Class Counsel or Plaintiff shall be sent to:

John A. Yanchunis

26

MORGAN & MORGAN COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

All Notices to Roadrunner Counsel or Roadrunner shall be sent to:

Paul G. Karlsgodt
BAKER & HOSTETLER, LLP
1801 California Street, Suite 4400
Denver, Colorado 80202

100.    Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of comments, Objections, requests for exclusion, or other documents, communications, or filings received as a result of the Notice.

## XI.    SETTLEMENT APPROVAL PROCESS

101.    As soon as practicable after execution of this Settlement Agreement, the Parties shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement, requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit D, or an order substantially similar to such form in both terms and cost, which:

(a)    Preliminarily approves this Settlement Agreement;

(b)    Certifies the Settlement Class for settlement purposes only pursuant to Paragraph 47;

(c)    Finds that the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant providing notice to Settlement Class Members;

(d)    Appoints the Settlement Administrator in accordance with the provisions of Section V;

(e)    Approves the Notice Program and directs the Settlement Administrator to provide notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

27

(f)     Approves a customary form of short notice to be mailed to Settlement Class Members (the "Short-Form Notice") in a form substantially similar to the one attached hereto as Exhibit A and a customary long form of notice ("Long-Form Notice") in a form substantially similar to the one attached hereto as Exhibit B, which together shall include a fair summary of the Parties' respective litigation positions, the general terms of the Settlement set forth in this Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time, and place of the Final Approval Hearing;

(g)     Approves a Claim Form substantially similar to that attached hereto as Exhibit C, and directs the Settlement Administrator to conduct Claims Administration in accordance with the provisions of this Settlement Agreement;

(h)     Approves the Opt-Out and Objection procedures as outlined in this Settlement Agreement;

(i)     Schedules a Final Approval Hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court;

(j)     Appoints Class Counsel;

(k)     Appoints Plaintiff as the class representative;

(l)     Appoints a Person proposed by the Parties to serve as Claims Referee; and

(m)     Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement and the proposed settlement.

## XII.    FINAL APPROVAL HEARING

28

102.     Class Counsel and Roadrunner Counsel shall request that after Notice is completed, the Court hold a Final Approval Hearing and grant final approval of the Settlement set forth herein. The Parties will recommend that the Final Approval Hearing shall be scheduled no earlier than one hundred eighty (180) Days after the entry of the Preliminary Approval Order.

103.     The Parties will file with the Court their briefs in support of final approval, attorneys' fees, costs, and expenses, and Service Awards, no later than thirty (30) Days before the Final Approval Hearing, or as directed by the Court. The Parties will file with the Court their responses to any Objections no later than fourteen (14) Days before the Final Approval Hearing, or as directed by the Court.

104.     The Parties shall ask the Court to enter a Final Order and Judgment in substantially the same form as Exhibit E.

105.     If and when the Final Order and Judgment becomes Final, the Action shall be dismissed with prejudice, with the Parties to bear their own attorneys' fees, costs, and expenses not otherwise awarded in accordance with this Settlement Agreement.

106.     Roadrunner shall cause the Settlement Administrator to provide notice of the Settlement to the appropriate state or federal officials in accordance with the Class Action Final Approval Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1715.  No later than fourteen (14) Days before the Final Approval Hearing, Roadrunner shall file with the Court a certification of compliance with the CAFA Notice requirements including the date of such compliance.

## XIII.   TERMINATION OF THIS SETTLEMENT AGREEMENT

107.     Each Party shall have the right to terminate this Settlement Agreement if:

(a)     the Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that is not substantially similar in form and substance to Exhibit D hereto);

29

(b) the Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs in substance from Exhibit E hereto); or,

(c) the Final Order and Judgment do not become Final because a higher court reverses final approval by the Court.

108. Roadrunner shall have the right to terminate this Settlement Agreement if the total number of Opt-Outs exceeds 10 members of the Settlement Class. The date for purposes of calculating the occurrence of the condition permitting termination under this paragraph shall be the date of delivery of the Opt-Out List.

109. If a Party elects to terminate this Settlement Agreement under this Section XIII, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, or e-mail within ten (10) Days of the occurrence of the condition permitting termination.

110. Nothing shall prevent Plaintiff or Roadrunner from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement. In the event such appellate proceedings result, by order of the appellate court or by an order after remand or a combination thereof, in the entry of an order(s) whereby the Settlement is approved in a manner substantially consistent with the substantive terms and intent of this Settlement Agreement, and dismissing all claims in the Action with prejudice, and otherwise meeting the substantive criteria of this Settlement Agreement for approval of the Settlement, such order shall be treated as a Final Approval Order.

111. If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement and all orders entered in connection therewith shall be rendered null and void; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used

30

in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*; (iii) Defendant shall be responsible for all notice and claims administration costs incurred prior to the termination or disapproval; and (iv) all Parties shall be deemed to have reverted to their respective positions and status in the Action as of May 21, 2019 and shall jointly request that a new case schedule be entered by the Court.

## XIV.   RELEASE

112.    On the Effective Date, the Parties and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided hereunder.  No other action, demand, suit, arbitration, or other claim may be pursued against Roadrunner or the Related Entities with respect to the Released Claims.

113.    Upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, pursuing, or participating in any recovery in any action in this or any other forum (other than participation in the Settlement as provided herein) in which any of the Released Claims is asserted.

114.    On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, (i) Plaintiff and each Settlement Class Member, and each of their respective spouses and children with claims on behalf of the Settlement Class Member, executors, representatives, guardians, wards, heirs, estates, successors, predecessors, next friends, co-borrowers, co-obligors, co-debtors, legal representatives, attorneys, agents, and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including the government in the capacity as parens patriae or on behalf of creditors or estates of

31

the releasors), and each of them (collectively and individually, the "Releasing Persons"), and (ii) Class Counsel and each of their past and present law firms, partners, or other employers, employees, agents, representatives, successors, or assigns will be deemed to have, and by operation of the Judgment shall have, fully, finally, completely, and forever released and discharged the Released Persons from the Released Claims. The release set forth in the preceding sentence (the "Release") shall be included as part of any judgment, so that all Released Claims shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.

115. Without in any way limiting the scope of the Release, the Release covers, without limitation, any and all claims for attorneys' fees, costs, and expenses incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement, the administration of such Settlement and/or the Released Claims as well as any and all claims for the Service Award to Plaintiff.

116. With respect to all Released Claims, Plaintiff and each of the other Settlement Class Members agree that, upon the Effective Date, Plaintiff expressly shall have, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, waived and relinquished to the fullest extent permitted by law (a) the provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR" and (b) the provisions, rights, and benefits conferred by any law of any state or territory of the United States, federal law or principle of common law, or

32

of international or foreign law, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which the Release is a part.

117.    Subject to Court approval, as of the Effective Date, all Settlement Class Members shall be bound by this Settlement Agreement and the Release and all of their claims shall be dismissed with prejudice and released, irrespective of whether they received actual notice of the Action or this Settlement.

118.    As of the Effective Date, the Released Persons are deemed, by operation of the entry of the Final Order and Judgment, to have fully released and forever discharged Plaintiff, the Settlement Class Members, Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or any of them, of and from any claims arising out of the Action or the Settlement. Any other claims or defenses Roadrunner or other Released Persons may have against Plaintiff, the Settlement Class Members, Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, including, without limitation, any claims based upon or arising out of any employment, debtor-creditor, contractual, or other business relationship that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims are not released, are specifically preserved and shall not be affected by the preceding sentence.

119.    As of the Effective Date, the Released Persons are deemed, by operation of entry of the Final Order and Judgment, to have fully released and forever discharged each other of and

33

from any claims they may have against each other arising from the claims asserted in the Action, including any claims arising out of the investigation, defense, or Settlement of the Action.

120. Nothing in the Release shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

## XV. EFFECTIVE DATE

121. The "Effective Date" of this Settlement Agreement shall be fourteen (14) Days after the date when each and all of the following conditions have occurred:

(a) This Settlement Agreement has been fully executed by all Parties and their counsel;

(b) Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement and approving the Notice Program and Claim Form, all as provided above;

(c) The Court-approved Notice has been mailed and the Settlement Website has been duly created and maintained as ordered by the Court;

(d) The Court has entered a Final Order and Judgment finally approving this Settlement Agreement, as provided above; and

(e) The Final Order and Judgment has become Final.

## XVI. MISCELLANEOUS PROVISIONS

122. The recitals and exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

123. The Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

124.    This Settlement Agreement is for settlement purposes only. No provision contained in this Settlement Agreement or any action taken hereunder shall constitute or be construed as an admission of the merit or validity of any claim or any fact alleged in the Action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Roadrunner or the Released Persons or any admission by Roadrunner or the Released Persons of any claim or allegation made in any action or proceeding or any concession as to the merit of any of the claims asserted by Plaintiff in the Action. This Settlement Agreement shall not be offered or be admissible in evidence against the Parties or the Released Persons or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by Roadrunner or the Released Persons that Plaintiff's claims or any similar claims are suitable for class treatment.

125.    In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing such agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Settlement Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement in order to give this Settlement Agreement full force and effect.

126.    No Person shall have any claim against Plaintiff, Class Counsel, Roadrunner, Roadrunner Counsel, the Settlement Administrator, the Claims Referee, the Released Persons, or their agents based on administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any court order.

35

127.     This Settlement Agreement constitutes the entire agreement between and among the Parties with respect to the settlement of the Action.  This Settlement Agreement supersedes all prior negotiations and agreements with respect to the settlement of the Action and may not be modified or amended except by a writing signed by or on behalf of the Parties or their respective successors-in-interest.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

128.     There shall be no waiver of any term or condition absent an express writing to that effect by the waiving Party.  No waiver of any term or condition in this Settlement Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

129.     In the event a third party, such as a bankruptcy trustee, former spouse, or other third party has or claims to have a claim against any payment made to a Settlement Class Member, it is the responsibility of the Settlement Class Member to transmit the funds to such third party.

130.     The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense.  The Parties each agree that the Settlement was negotiated in good faith by the Parties and was reached voluntarily after consultation with competent legal counsel.  The Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable

36

basis. It is agreed that neither Party shall have any liability to one another as it relates to the Action, except as set forth herein.

131. This Settlement Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement. All terms, conditions, and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

132. The Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court for purposes of the implementation and enforcement of the Settlement embodied in this Settlement Agreement and any dispute with respect thereto.

133. This Settlement Agreement shall be construed under and governed by the laws of the state of Illinois without regard to its choice of law provisions.

134. In the event that any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision had never been a part of this Settlement Agreement as long as the benefits to Roadrunner or the Settlement Class Members are not materially altered as the result of the invalid, illegal, or unenforceable provision.

37

135. This Settlement Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties.

136. The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

137. All dollar amounts are in United States dollars (USD).

138. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

139. Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

140. Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

38

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

| Dated: February 3, 2020 | Dated: February 3, 2020 |
|---|---|
| /s/  Paul G. Karlsgodt<br>**PAUL G. KARLSGODT**<br>BAKER & HOSTETLER LLP<br>1801 CALIFORNIA STREET, SUITE 4400<br>DENVER, CO 80202<br>303-861-0600<br>pkarlsgodt@bakerlaw.com | */s/ John A. Yanchunis*<br>**JOHN A. YANCHUNIS**<br>MORGAN & MORGAN<br>COMPLEX LITIGATION GROUP<br>201 N FRANKLIN ST 7TH FL<br>TAMPA, FL 33602<br>813-275-5272<br>Email: jyanchunis@forthepeople.com |
| **GEORGE J. TZANETOPOULOS**<br>**KILEY C. KEEFE**<br>BAKER & HOSTETLER LLP<br>ONE NORTH WACKER DRIVE, SUITE 4500<br>CHICAGO, IL 60606<br>312-416-6200<br>gtzanetopoulos@bakerlaw.com<br>kkeefe@bakerlaw.com<br><br>*Attorneys for Roadrunner* | **SHANNON M. MCNULTY**<br>CLIFFORD LAW OFFICES, P.C.<br>120 NORTH LASALLE STREET, 31ST FL<br>CHICAGO, IL 60602<br>312-625-6192<br>smm@cliffordlaw.com<br><br>*Attorneys for Plaintiff and the Class* |