**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GEORGE NELSON, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | Civil Action No.: 1:18-cv-07400 |
| Plaintiff, | ) | Honorable Sara L. Ellis |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ROADRUNNER TRANSPORTATION | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**UNCONTESTED MOTION FOR FINAL ORDER AND JUDGMENT GRANTING**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

In April and May, 2018, the Defendant Roadrunner Transportation Systems, Inc. ("Defendant" or "Roadrunner") was the subject of a phishing attack on its employee email system, which lead to the Data Exposure.[1] Through the Data Exposure, the attackers gained access to Defendant's human resources platform and exposed sensitive, personally identifying information of current and former employees, including their names, addresses, birthdates, Social Security numbers, financial account information, medical and insurance information, and other types of PII. On November 7, 2018, Plaintiff George Nelson ("Plaintiff"), a former employee of Defendant whose PII was compromised, sued Defendant on behalf of himself and others similarly situated. (Doc. 1).

On November 14, 2019, counsel for the Parties successfully finalized a multiple-day mediation of this Action with mediator Faustin A. Pipal.  The mediation was successful, and the Parties reached a settlement.

Consequent upon a hearing on the matter (Doc. 46), on February 26, 2020, the Court preliminarily approved the Settlement  (Doc. 48).  Plaintiff now respectfully requests that the Court enter an Order, in substantially similar form to Exhibit E of the Settlement Agreement (Doc. 44-6), finally approving the Settlement and certifying the Settlement Class.

Final approval of the Settlement is warranted.  Judicial policy favors pretrial settlements of class actions. *See, e.g.*, *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at \*6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616

---

[1] Unless otherwise defined herein, capitalized terms have the meaning attributed to them in the Settlement Agreement ("Settlement" or "SA") (Doc. 44-1).

F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.").

The valuable benefits made available pursuant to the Settlement squarely address the issues and claims raised in this Action and provide significant relief to the Settlement Class. The Settlement affords significant monetary and injunctive relief to the Settlement Class, including identity theft protection, compensation for out-of-pocket losses and lost time, enhanced cybersecurity measures and business practice changes, as well as a service award to Plaintiff, and reasonable attorneys' fees, litigation costs, and expenses to Class Counsel. The injunctive relief provided by the settlement aims to prevent an incident, similar to that which led to the Data Exposure, from occurring again; and the monetary relief is crafted to compensate class members for the consequences stemming from the Data Exposure. The Settlement compares favorably with settlements in similar litigations and the Parties reached it only after intensive arm's length negotiations before a skilled mediator. Accordingly, and for the reasons articulated more fully below, Plaintiff respectfully requests that this Court finally approve the Settlement and certify the Settlement Class.

## II. OVERVIEW OF PLAINTIFF'S CLAIMS, THE LITIGATION, AND PROCEDURAL HISTORY

On November 7, 2018, Plaintiff filed his Class Action Complaint ("CAC") (Doc. 1). On January 11, 2019, the Parties filed their Joint Initial Status Report, wherein Roadrunner denied liability in connection with Plaintiff's claims (Doc. 12). On January 15, 2019, Roadrunner was granted an unopposed extension of time to March 8, 2019 to respond to Plaintiff's Complaint (Doc. 14). On February 20, 2019, Roadrunner was granted an unopposed extension of time to April 8, 2019 to respond to Plaintiff's Complaint (Doc. 17). On April 5, 2019, Defendant filed its Motion to Dismiss and Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint (Doc. 18

2

and Doc. 19).  On April 10, 2019, Defendant's Motion to Dismiss was withdrawn (Doc. 21).  On July 2, 2019, Plaintiff filed his Motion for Extension of Time to Submit Petition for Settlement Approval and for Continuance Status Hearing on July 10, 2019 (Doc. 28).  On July 9, 2019, Plaintiff was granted an extension of time to August 2, 2019 to submit his Petition for Settlement Approval, and the Status Hearing was rescheduled to August 8, 2019 (Doc. 29).  On August 21, 2019, Defendant filed an Unopposed Motion for Extension of Time to Submit Petition for Settlement Approval and for Continuance of Status Hearing (Doc. 33).  On September 3, 2019, Defendant was granted an extension of time to November 4, 2019 to submit the petition for settlement approval, and the Status Hearing was rescheduled to November 12, 2019 (Doc. 35).  On October 31, 2019, Plaintiff filed an Unopposed Motion for Extension of Time to Submit Petition for Settlement Approval and for Continuance of Status Hearing (Doc. 36).  On November 8, 2019, Plaintiff was granted an extension of time to January 13, 2020 to submit the petition for settlement approval, and the Status Hearing was rescheduled to January 21, 2020 (Doc. 38).  Consequently, the Parties worked together to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and attendant exhibits. (Doc. 44).

Consequent upon a hearing on the matter (Doc. 46), on February 26, 2020, the Court preliminarily approved the Settlement  (Doc. 48).

Notice was provided to the Class. Since approval, the reaction of the Class has been positive.  Only one opt-out and zero objections have been received.  *See* Declaration of Cameron R. Azari, attached hereto as **Exhibit 1**, at ¶ 18 (hereinafter, "CRA Dec").  Given this positive reaction of the Class, and the significant benefits provided by the Settlement, this Court should grant Plaintiff's motion and finally approve the Settlement.

3

## III.     THE SETTLEMENT TERMS

### A.  <u>Settlement Class</u>

The Settlement contemplates relief for the following Settlement Class:

> All current and former Roadrunner employees whose HR Data was compromised as a result of the Data Exposure that occurred between April and May 2018.

(Doc. 48 at 2).

### B.  <u>Settlement Relief</u>

Pursuant to the terms of the Settlement Agreement, Defendant will make the following relief available to Settlement Class Members who, except where noted in the Settlement Agreement, submit a valid Claim Form: (1) identity theft protection; (2) reimbursement of expenses; and (3) injunctive relief in the form of significant business practice changes, as discussed below.  SA ¶¶ 52–53.

#### 1.  Identity Theft Protection

All Settlement Class Members will be given an opportunity to enroll in Experian's IdentityWorks identity theft protection services for a period of 24 months.  This enrollment will be for an additional 24 months beyond the AllClear or Kroll identity theft protection services provided to affected employees following the Data Exposure.  Settlement Class Members will be given one year from the date the activation codes are mailed in which to activate the additional credit monitoring.   The approximate retail value to each class member accepting this benefit is $19.99 per month of enrollment, although this does not reflect the actual cost to Defendant in providing the benefit.  SA ¶ 52(a).

#### 2.  Reimbursement of Expenses

Defendant has also agreed to reimburse Settlement Class Members for the out-of-pocket expenses and lost time resulting from the Data Exposure. The Settlement Agreement is structured so that Settlement Class Members can be compensated for two different claim types – ordinary losses (Claim A) and extraordinary losses (Claim B). SA ¶ 52(b).

Specifically, compensation for ordinary losses (Claim A) includes up to a total of $250 per Class Member upon submission of a valid claim with supporting documentation. Ordinary losses include: (i) costs associated with credit monitoring or identity theft insurance purchased directly by the claimant, provided that the claimant attests the product was purchased primarily as a result of the Data Exposure; (ii) costs associated with requesting a credit report or credit freeze, provided that the claimant requested the report or credit freeze as a result of the Data Exposure; (iii) lost time of at least one hour and up to three hours at the rate of $20 per hour, provided that the claimant provides documentation or a narrative explanation plausibly establishing that the time was spent dealing with issues relating to the Data Exposure; and (iv) postage, long-distance charges, and other incidental expenses, provided that the claimant provides documentation of the charges and a narrative explanation plausibly establishing their relationship to the Data Exposure. SA ¶ 52(b).

Additionally, compensation for extraordinary losses (Claim B) includes up to a total of $5,000 per Class Member, provided that the losses are otherwise unreimbursed, plausibly the result of the Data Exposure, and supported by reasonable documentation of the amount of the losses. Extraordinary losses include: losses associated with identity theft, tax fraud, other forms of fraud, and other actual misuse of personal information, provided that the claim is supported by reasonable documentation of the amount of the losses and provided that the losses are otherwise unreimbursed and plausibly the result of the Data Exposure. Settlement Class Members who submit qualifying claims under Claim B may also seek reimbursement for up to 10 hours of lost time at the rate of

$25 per hour, for time spent dealing with issues relating to the identity theft, fraud, or other misuse. Before being eligible for payment for extraordinary losses, Settlement Class Members who previously signed up for AllClear's identity theft protection services or Kroll's identity theft protection services offered by Roadrunner must submit their claim to AllClear or Kroll and have that claim denied or exhausted. Settlement Class Members may submit claims for both claim types. SA ¶ 52(b).

Settlement Class Members may seek reimbursement for each hour of lost time only once, regardless of whether the time was spent addressing issues in multiple categories simultaneously. The overall cap for any individual claimant is $250 for all amounts claimed in Claim A, and $5,000 for all amounts claimed in Claim B. For purposes of any claim for reimbursement for lost time, the claimant must have spent at least one full hour before being entitled to claim one or more hours of time. SA ¶ 52(b).

The monetary relief outlined above was developed and negotiated on the basis of the experience of Class Counsel in other cases of the type at issue here, as well as their interactions and interviews of present and former employees whose information is taken in compromises similar to the one at the heart of the litigation here. It is Class Counsel's seasoned judgment that the relief fairly addresses what Settlement Class Members may experience or have experienced as a result of the compromise. *See* Declaration of John A. Yanchunis in Support of Final Approval, ¶ 4, attached hereto as **Exhibit 2** (hereafter, "JAY Dec").

### 3. Business Practice Changes

In addition to the monetary relief detailed above, Roadrunner has agreed to make significant business practice changes in order to prevent future cyberattacks and data exposures. For a period of three years following the date of execution of the Settlement Agreement, Defendant

6

will implement and maintain certain data security measures through at least December 31, 2022, including:

      a.    <u>Incident Response Plan</u>: Prior to the entry of final approval of the Settlement Agreement, Roadrunner will develop and implement an Incident Response Plan to immediately respond to future data security issues.

      b.    <u>Additional Personnel</u>: Roadrunner agrees to (i) employ a Chief Information Officer who reports directly either to the Chief Executive Officer or the Chief Operating Officer, and (ii) create an Immediate Response IT Team and add immediate response personnel to existing teams, including the End User Support and Server Engineering Teams, to increase IT responsiveness and to support other data security initiatives.

      c.    <u>Cybersecurity Training and Awareness Program</u>: Roadrunner agrees to implement annual on-line cybersecurity training for all employees, covering different aspects of cybersecurity and to further educate employees on cybersecurity.

      d.    <u>Data Security Policies</u>:  Roadrunner will create and implement new policies, protocols, and controls related to the ownership, review, and distribution of personally identifiable information and other private data; the security of any files containing the personally identifiable information of employees; and, the electronic transfer of such files.

      e.    <u>Enhanced Security Measures For Email Accounts, Servers, And Employee Computers</u>: Roadrunner will (i) deploy Cofense PhishMe or a similar product to advance employee awareness through training, education, and testing, and to create a culture of cyber safety, and (ii) deploy Cofense Triage or a similar product to quickly and efficiently identify and shut down phishing attacks in progress.

f.    Restricted Access to Tax, Payroll, and Health Plan Information: Before December 31, 2019, Roadrunner will: (i) implement policies reducing the number of administrators with access to tax, payroll, and health plan information, and (ii) block foreign access to Office 365 from 140 countries, including China, Russia, and Nigeria.

g.    Testing of Policies and Information Security Environment: Roadrunner will implement monthly random testing to validate adherence of employees to Roadrunner's data security policies, including quarterly sweeps and analyses of email access to monitor for threats.

h.    Access Audits:  Roadrunner will conduct audits to monitor attempts by employees to access tax, payroll, and health plan information to ensure adherence to restricted access policies. Through December 31, 2019, Roadrunner will conduct quarterly audits.  From January 1, 2020 through December 31, 2022, Roadrunner will conduct biannual audits.  SA ¶ 53.

**C.    Other Benefits to the Class**

Further, separate and apart from providing the foregoing benefits, Defendant will separately pay the following items, which will not reduce in any way the relief afforded by the Settlement to the Settlement Class:  (1) The costs of class notice and claims administration, currently estimated to be $75,170 (CRA Dec ¶ 23); (2) subject to Court approval, a Service Award of $2,500 to Plaintiff in recognition for his efforts in serving as the class representative in this matter (SA ¶ 94); and (3) subject to Court approval, Class Counsel's attorneys' fees, costs, and expenses in an aggregate amount not to exceed $388,000 (SA ¶ 95).

**D.  Other Key Provisions of the Settlement**

**1.    Notice Program**

Pursuant to the Preliminary Approval Order, and in accordance with the Settlement Agreement, the Notice Program was implemented by the Settlement Administrator.  CRA Dec.

¶¶ 6–14. Specifically, on March 27, 2020, Epiq mailed 14,189 Postcard Notices via First Class U.S. mail to all Settlement Class Members. CRA Dec. ¶ 10. Long Form Notices and Claim Forms were mailed via USPS first class mail to any persons who requested. *Id.* at ¶ 12. For Notices that were returned as undeliverable, Epiq undertook additional public records research, including using a third-party lookup service, resulting in—as of July 15, 2020—the re-mailing of 14 Notices. *Id.* at ¶ 13. Notably, the Notice Program reached 99% of the Settlement Class. *Id.* at ¶ 14.

Also on March 26, 2020, a neutral, informational, Settlement Website (www.RoadrunnerBreachSettlement.com) was established so that members of the Settlement Class can file claims, and obtain additional information and case documents, including the Complaint, Long Form Notice, Settlement Agreement, Order Granting Preliminary Approval, paper Claim Form, and Answers to Frequently Asked Questions. As of July 15, 2020, there have been 1,033 unique visitors to the website and 6,463 website pages presented. *Id.* at ¶ 15. In addition, on March 26, 2020, a toll-free number (1-866-977-0850) was established to allow Settlement Class Members to call and get information about the Settlement in the form of recorded answers to Frequently Asked Questions. Callers can also request that a Long Form Notice and Claim Form be sent by mail. This automated phone system is available 24 hours per day, 7 days per week. As of July 15, 2020, the toll-free telephone number has handled 907 calls representing 4,497 minutes of use and service agents have handled 309 incoming calls representing 3,386 minutes of use. Service agents have also made 21 outbound calls representing 26 minutes of use. *Id.* ¶ 16.

### 2. Claim Administration

Epiq will administer the claims as they are received in accordance with the terms of the Settlement, any additional processes agreed to by Class Counsel and Roadrunner's Counsel, and

subject to the Court's supervision and direction as the circumstances may require. To make a claim, a Settlement Class Member must complete and submit a valid, timely, and sworn Claim Form. Claim Forms are to be submitted either online or by U.S. mail and must be postmarked no later than the Claims Deadline. Epiq then reviews and evaluates each Claim Form, including any required documentation submitted, for validity, timeliness, and completeness.

Subject to the terms and conditions of the Settlement Agreement, as soon as practicable after the Effective Date, Epiq will mail or otherwise provide a Claim Check in the amount of the Claimant Payment to each Settlement Class Member who has returned or submitted a Valid Claim Form. The Claim Checks will be mailed to the address provided by the Settlement Class Member on his or her Claim Form. All Claim Checks issued under this section shall be void if not negotiated within 60 calendar Days of their date of issue and shall contain a legend to that effect. Claim Checks issued pursuant to this section that are not negotiated within 60 calendar Days of their date of issue shall not be reissued.

### E. Class Member Response

The Class's response to the Settlement has been positive. While the deadline to request exclusion from, or object to, the Settlement was June 25, 2020, Epiq received only one request for exclusion from the Settlement Class and no objections. CRA Decl., ¶ 18. Moreover, although CAFA notice was provided to the United States and applicable state Attorneys General, none have raised concern regarding the Settlement. CRA Decl., ¶ 8; Doc. 55 (Defendant's CAFA Notice of Compliance). And, while the Claims Deadline is still many months off—not passing until March 22, 2021—Claim Forms have already begun to come in and be processed. CRA Dec ¶ 14.

## IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A. The Settlement Should be Finally Approved and the Settlement Class Should Be Finally Certified under Rule 23(e)

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Fed. R. Civ. P. 23(e). Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. *Manual for Complex Litigation,* Fourth, § 21.61 (2004). "'Federal courts naturally favor the settlement of class action litigation.'" *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). The approval process typically involves two steps. First, the settlement is approved preliminarily following the submission by the parties of relevant information concerning the terms of the settlement and the history of the litigation. Second, after notice of the proposed settlement is given to the class, the court conducts a final approval hearing, also known as a fairness hearing. *Besic v. Byline Bank, Inc.*, Case No. 15 C 8003 at *1, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015).

Ultimately, to approve the proposed settlement, this Court must determine that it is fair, reasonable and adequate. *Reynolds, et al. v. Beneficial Nat'l Bank, et al.,* 288 F.3d 277, 279 (7th Cir. 2002). A presumption of fairness exists where the settlement is reached through arm's length negotiations, sufficient investigation has taken place to allow counsel and the Court to act intelligently, and counsel is experienced in similar types of litigation. *Duhaime v. John Hancock Mut. Life. Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) (settlement is presumed fair where it is the product of arm's-length negotiations).

Revised Rule 23(e)—effective on December 1, 2018—reflects the factors already used in this Circuit for final class settlement approval: (1) the strength of plaintiffs' case compared to the

11

terms of the proposed settlement; (2) the complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *In re AT&T Mobility Wireless*, 270 F.R.D. 330, 346 (N.D. Ill. 2010); *see also Wong v Accretive Health, Inc*., 773 F.3d 859 (7th Cir. 2014) (setting forth relevant factors for determining fairness of class action settlement).

In the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement. *Odon USA Meats, Inc. v. Ford Motor Credit Corp.*, Case No. 93 C 6848 at *7, 1994 WL 529339 (N.D. Ill. Sept. 27, 1994) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("we will demand a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it in such cases [when class action settlement is reached prior to class certification] than where a class has been certified and class representatives have been recognized at an earlier date")). Accordingly, such agreements must withstand "a more careful scrutiny." *Id*.

Plaintiff addresses each of the above-listed settlement factors articulated within the Seventh Circuit and by amended Rule 23(e) and submits that they collectively weigh heavily in favor of final approval.

With respect to the five *Wong* factors referenced above, the Court should recognize "that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (*citing Isby*, 75 F.3d at 1199). That said, a settlement ought not be confused or conflated with a perfect trial

win. The Court should "consider the facts in the light most favorable to the settlement." *Isby*, 75 F.3d at 1198-99. Further, "[t]he essence of settlement is compromise . . . . Thus the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985). The Court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 284–85 (7th Cir. 2017).

### 1. The Strength of the Settlement Compares Favorably to Plaintiff's Case

As stated above, a salient factor for the Court's consideration at this preliminary approval juncture is the strength of the Plaintiff's case balanced against the benefits offered in the Settlement. *Isby*, 75 F.3d at 1196-97; *Synfuel Techs Inc.*, 463 F.3d at 653; *Reynolds*, 288 F.3d at 285; *Kaufman*, 877 F.3d at 284-85. Here, the Settlement is fair, reasonable, and adequate, and within the range of possible approval. While Plaintiff is proud of the Settlement that was negotiated in this action, and though Class Counsel is confident about the trial posture, a case of this type has not ever been tried, and, as a result there is no trial tested theory of damages on a class-wide basis. Moreover, class certification was far from certain based on the ever-present argument that the damage analysis would be too individualized to certify. Another problem here was that if certification was lost, the small induvial damages coupled with the substantial expense in litigating these claims individually, particularly in connection with the costs of experts, would result in very few if any of these claims being litigated, and overall, the class of affected consumers would receive nothing. As Judge Posner stated, "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."

*Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (emphasis in original). In comparison, the Settlement affords concrete, measurable relief to class members on a nationwide basis, and does so without need for individual trials on damages or the inherent delay, cost, and uncertainty of individual trials. *See* JAY Dec ¶ 4.

This factor strongly favors final approval. *Kaufman*, 877 F.3d at 284-85.

## 2. The Complexity, Length and Expense of Continued Litigation Favors Settlement

The second factor calls upon the Court to evaluate the action's complexity, expense, and time required to conclude the matter. This factor strongly favors final approval. Data breach cases, such as this, are at the forefront of today's privacy litigation, and often involve complex and evolving technology and cyberattack methods that may have not yet been the subject of litigation. They chart a nascent and developing legal landscape. Because the legal issues are complex and technical, data breach cases are often driven by expert testimony and focused on some of the more complex technological topics that may be encountered in trial practice. And with such complexities comes expense. These same elements make individual litigation for any Class Members' claims cost-prohibitive and, therefore, unlikely. JAY Dec, ¶ 5.

This case was filed on November 7, 2018 and the parties began mediating on March 11, 2019. Mediation concluded and a settlement in principle was reached by November 14, 2019. Through early mediation and class-wide resolution, the parties have foregone the hefty expenses typically associated with technical experts and applied towards the Settlement those funds that would have otherwise been paid to experts over months and/or years of litigation. JAY Dec ¶ 5.

Despite the fact that the litigation, mediation, and resolution of this case have moved swiftly, significant time has passed since the initial filing of this case. Even after an initial (b)(3) trial, and assuming Plaintiff prevails on all his claims, many months, if not years, of further

litigation will necessarily follow in a trial concerning damages. With the prospect of the substantial, hard-fought results reached by the parties in the Settlement, the interests of affected Class Members are clearly best served by the Settlement. JAY Dec ¶ 5.

### 3. The Opinion of Competent Counsel and the Serious, Informed, and Non-Collusive Negotiations

Plaintiff's trial team is led by John Yanchunis and Shannon McNulty, both of whom are nationally recognized and respected by the class action bar. JAY Dec. Dec ¶ 6. Had the parties not reached a prospective settlement that offered meaningful relief in a relatively short time frame, and for as many Class Members as possible, Mr. Yanchunis and Ms. McNulty would not have recommended settlement. JAY Dec ¶ 6.

Not only do Class Counsel steadfastly agree that the Settlement is beneficial and in the best interest of the Settlement Class, the manner in which it was achieved lends the Settlement additional, firm credence. Specifically, Mr. Faustin Pipal served as mediator in this matter. His efforts were extraordinary, diligent and fair, ensuring the parties' negotiations were at arms-length and in good faith. Indeed, the settlement terms actually came to fruition at his recommendation and with his diligent involvement as the mediator. JAY Dec ¶ 6.

A proposed Settlement is presumed to be fair and reasonable when it resulted from arm's-length negotiations. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F. 2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D 369, 375-76 (D.D.C. 2002) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations") (internal quotation omitted); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal

quotation omitted). The presumption certainly applies here.

### 4. The Stage of the Proceedings and the Amount of Discovery Completed

The proposed settlement came while Defendant's motion to dismiss was pending. While the Settlement was reached before the parties engaged in lengthy formal discovery, the parties did engage in informal discovery to ensure that Plaintiff had the necessary information regarding the details of the Data Exposure to effectuate a settlement that included relevant and meaningful relief. To this end, Plaintiff requested significant document production from Defendant in advance of mediation, and Defendant voluntarily produced the requested documents and information. This voluntary exchange of documentation and information ensured that all relevant facts, issues, strengths, and weaknesses were known to all and informed the parties and their respective counsel as they engaged in mediation. Accordingly, this factor bodes well for settlement approval. JAY Dec ¶ 7.

### 5. Settlement Treats Each Respective Class Member Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement for their losses, whether in the form of time, out-of-pocket costs, or both; and all impacted Settlement Class Members can receive credit monitoring.[2]

### B. The Rule 23(a) and (b) Prerequisites for Final Class Certification Are Satisfied

#### 1. Rule 23(a)

Rule 23(a)(1)-(4) requires that any proposed class meet four (4) prerequisites: numerosity, commonality, typicality and adequacy of representation. Here, each element is satisfied.

---

[2] No Rule 23(e)(3) side-agreements are in place in this matter.

### a. Numerosity – Rule 23(a)(1)

Defendant identified 14,189 Settlement Class Members based on its HR Data and internal investigation of the Data Exposure. *See* CRA Dec. ¶ 9. Numerosity is clearly met.

### b. Commonality—Rule 23(a)(2)

Commonality asks whether class members share at least one common question of law or fact. *Barragan v. Evanger's Dog & Cat Food Co*., 259 F.R.D. 330, 334 (N.D. Ill. 2009). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The element "does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs, so the 'low commonality hurdle is easily surmounted.'" *Kaufman v. American Express Travel Related Servs. Co*., 264 F.R.D. 438, 442 (N.D. Ill. 2009) (citation omitted).

The Settlement Class satisfies the commonality requirement. Each Settlement Class Member is a current or former employee of Roadrunner whose personally identifiable HR Data was exposed as a result of the Data Exposure. Further, based on the nature and subject matter of the Data Exposure, the alleged damages suffered by the Class are understood and have been addressed fairly in the Settlement. JAY Dec. ¶ 8.

### c. Typicality—Rule 23(a)(3)

The typicality requirement under Rule 23(a)(3) is "liberally construed" and easily satisfied. *Saltzman v. Pella Corp.,* 257 F.R.D. 471, 479 (N.D. Ill. 2009); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc*., 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)

17

(quoting *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983)).

Again, Plaintiff's and the Settlement Class's claims derive from the same overarching operative facts and bases for relief.  This element is satisfied.

### d.  Adequate Representation—Rule 23(a)(4)

Rule 23(a)(4) requires that the class representatives and class counsel "fairly and adequately protect the interests of the class."  This element requires that the class representative (1) has a "sufficient interest in the outcome to ensure vigorous advocacy" and (2) does "not have interests that conflict with those of the class"; the element also requires that the class representative's lawyers be "qualified, experienced, and able to conduct the litigation."  *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009), *affirmed on other grounds*, 728 F.3d 682 (7th Cir. 2013); *see also Rosario v. Livadtis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("[W]e have not previously interpreted Rule 23(a)(3) to require all class members suffer the same injury as the named class representative.  Instead, we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3).") (citation omitted).

"Thus, the adequacy requirement places only a "modest" burden on a class representative to demonstrate '[a]n understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'"  *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 398 (N.D. Ill. 2006) (quoting and citing *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 287, 393-94 (N.D. Ill. 2006)).

Plaintiff's interests and claims are entirely consistent with those held by the Settlement Class he represents.  *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010).  Plaintiff fully understands and accepts his charge as class representative of staying informed about the progress of the case and of conferring with Class Counsel regarding

18

developments, including court filings and discovery and, of course, the Settlement and its terms. JAY Dec ¶ 9. The named Plaintiff also fully understands and accepts his charge as class representative of bringing suit on behalf of other current and former employees of Roadrunner whose personally identifiable HR Data was exposed through the Data Exposure. JAY Dec. ¶ 9. Further, since neither conflicting nor antagonistic claims exist among class members, there are no conflicts of interest, let alone disqualifying ones. *Rosario*, 963 F.2d at 1018.

Finally, Class Counsel are reputable and highly experienced litigators, having handled numerous data breach, privacy, consumer protection, and other types of complex class actions. Plaintiff and his attorneys are fully capable of litigating this case and the interests of the Settlement Class have been and will be fairly and adequately protected. JAY Dec ¶ 5.

### 2. Rule 23(b)(3)

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff satisfies these requirements.

### a. Common Questions Predominate

The first part of Rule 23(b)(3) is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)). "'Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality tends strongly to satisfy a finding of predominance

because, like commonality, predominance is found where there exists a common nucleus of operative facts.'" *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)).

Here, there are multiple common questions that predominate and would be decided on a class-wide basis, including: (1) whether and to what extent Roadrunner had a duty to protect the HR Data of Class Members; (2) whether Roadrunner had a duty to not expose the HR Data of Class Members to unauthorized third parties; (3) whether Roadrunner had a duty to not use the HR Data of Class Members for non-business purposes; (4) whether Roadrunner failed to adequately safeguard the HR Data of Class Members; (5) whether Roadrunner adequately, promptly, and accurately informed Class Members that their HR Data had been compromised; (6) whether Roadrunner failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information exposed through the Data Exposure; (7) whether Roadrunner engaged in unfair, unlawful, or deceptive practices by failing to safeguard the HR Data of Class Members; (8) whether Class Members are entitled to actual, statutory, and/or punitive damages as a result of Roadrunner's wrongful conduct; (9) whether Plaintiff and the Members of the Class are entitled to restitution as a result of Roadrunner's wrongful conduct; and, (10) whether Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Exposure.

Further, because certification of a Settlement Class is sought here and there will be no trial, the Court need not inquire whether the case, if tried, would present manageability problems with individualized issues. *Smith v. Sprint Communications Co., L.P.*, 37 F.3d 612, 614 (7th Cir. 2004) (*quoting Amchem Prods.*, 521 U.S. at 591)).

**b. The Class Vehicle Is the Superior Method for Adjudicating This Controversy**

The second Rule 23(b) element—superiority of class adjudication—is easily established here. A class action is the most efficient and effective way to handle a case which, like here, involves standardized conduct on the part of Defendant "and each individual class member's claim would likely be too small to vindicate through an individual suit." *Hale v. ADNI, Inc.*, 264 F.R.D. 402, 407 (N.D. Ill. 2009). Rule-makers designed the class action device for a case like this: a large number of claims, in the thousands, which would be uneconomical to pursue on an individual basis. *Amchem Prods.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In this case, the potential number of Settlement Class Members is numerous, and the typical individual claim is too small for each individual Settlement Class Member to litigate in a separate action. The class action device is the only viable vehicle by which the Settlement Class may obtain a remedy. A class action is the appropriate and superior method for adjudication of these claims, and as such, Rule 23(b)(3) is satisfied.

**V.     THE NOTICE PROGRAM MET DUE PROCESS REQUIREMENTS**

In any proceeding that is to be accorded finality, due process requires that interested parties be provided with notice reasonably calculated, under the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). That means the settlement notices must fairly apprise the class members of the terms of the proposed compromise and give class members sufficient information to decide whether they should accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement. *Id.* Additionally, the notice must be

21

designed so as to have a reasonable chance of reaching a substantial percentage of the class members.  *Id.* at 318 (explaining notice must be reasonably calculated to reach interested parties).

Here, as explained above, the Notice Plan was implemented, reaching 99% of the Settlement Class.  CRA Dec ¶ 14.  Accordingly, the Court should find the Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement and that the Notice Plan met the requirements of Rule 23(e) and due process.

## VI.     THE COURT SHOULD CONFIRM AS FINAL ITS PRIOR APPOINTMENTS

In the Preliminary Approval Order the Court preliminarily appointed Class Counsel, the Class Representative, the Settlement Administrator, and the Claims Referee. (Doc. 48).  The Court should now confirm those appoints as final.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, courts generally consider the following attributes: (1) the proposed class counsel's work in identifying or investigating potential claims, (2) the proposed class counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) the proposed class counsel's knowledge of the applicable law, and (4) the proposed class counsel's resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, proposed Class Counsel have extensive experience prosecuting class action cases, and specifically data breach cases.  Accordingly, the Court should confirm as final the appointment of John A. Yanchunis of Morgan & Morgan Complex Litigation Group and Shannon M. McNulty of Clifford Law Offices, P.C., as Class Counsel.

Likewise, in light of his dedication to this matter and shepherding of this case from filing to resolution, the Court should confirm as final its prior appointment of Plaintiff George Nelson as Class Representative. *See* JAY Dec ¶ 9.

Finally, the Court should also confirm its previous appointment of Epiq Systems, Inc. ("Epiq") as the Settlement Administrator, and of Faustin A. Pipal as Claims Referee.

## VII.    CONCLUSION

For the foregoing reasons, the Court should enter an order (i) finally certifying the Settlement Class; (ii) finally appointing Plaintiff as Class Representative of the Settlement Class; (iii) finally appointing John A. Yanchunis of Morgan & Morgan Complex Litigation Group and Shannon M. McNulty of Clifford Law Offices, P.C., as Class Counsel; (iv) finally approving the Settlement of this action; (v) finally appointing Epiq Systems, Inc. to serve as the Settlement Administrator, and Faustin A. Pipal as the Claims Referee, and (vi) finding that the Notice Program satisfies Rule 23 and due process. In accord with the Settlement, Plaintiffs respectfully request that the Court enter a final order and judgment substantially in the form of Exhibit E to the Settlement Agreement, Doc. 44-6.

Dated: July 17, 2020                                   Respectfully submitted,

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

/s/ *John A. Yanchunis*
John A. Yanchunis (admitted *pro hac vice*)
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
T: (813) 223-5505
F: (813) 222-2434
jyanchunis@forthepeople.com

**CLIFFORD LAW OFFICES**

/s/ *Shannon M. McNulty*
Shannon M. McNulty, Esq.

Robert A. Clifford, Esq.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
T: (312) 899-9090
F: (312) 251-1160
smm@cliffordlaw.com
rclifford@cliffordlaw.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2020, I electronically filed a true and correct copy

of the foregoing unopposed motion with the Clerk of the Court using the CM/ECF system, which

will send notification to all attorneys of record in this matter.


/s/ *John A. Yanchunis*_____
John A. Yanchunis (admitted *pro hac vice)*

24